UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GLOBAL LIFT CORP.,

        Plaintiff,        Case No. 14-cv-12200

v        Honorable Thomas L. Ludington

HIWIN CORPORATION, et al.,

        Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO AMEND,
DIRECTING PLAINTIFF TO FILE AMENDED COMPLAINT,
AND DENYING MOTION TO DISMISS AS MOOT**

On June 4, 2014, Plaintiff Global Lift Corporation filed a complaint against Defendants, alleging breach of contract, negligent design, and breach of implied warranty. Compl. ¶ 1, ECF No. 1. Global Lift, a supplier of ADA-compliant poolside lifts, alleges that it entered into a series of transactions with Defendants in which Global Lift "submitted various Purchase Orders to Defendants for the design, manufacture, and delivery of specially manufactured actuators, control boxes, batteries, battery packs, handheld switches and related components." Global Lift further alleges that the actuator systems were to be manufactured in Taiwan by Defendants Hiwin Technologies and Hiwin Mikrosystems (together the "Taiwanese Defendants"), shipped to Hiwin Corporation in Illinois, and then shipped to Global Lift in Michigan.

The Taiwanese Defendants' motion to dismiss for lack of personal jurisdiction and Defendants' motion to transfer the case to the Northern District of Illinois were denied on June 22, 2016. *See* Op. & Order, ECF No. 57. On July 21, 2016 Defendants then moved to dismiss Count II of Plaintiff's complaint, arguing that it is barred by Michigan's economic loss doctrine.

*See* Def.'s Mot. Dismiss, ECF No. 62. In response, Plaintiff moved to amend its complaint. *See* Pl.'s Mot. Amend, ECF No. 78. For the reasons stated below, Plaintiff's motion to amend will be granted in part and denied in part and Defendant's motion to dismiss will be denied as moot.

**I.**

Global Lift is a Michigan corporation with its principal place of business in Bad Axe, Michigan. Compl. ¶ 3. Global Lift supplies ADA-compliant poolside lifts for public swimming pools and spas in the United States. *Id.* at ¶ 2.

Defendant Hiwin Corporation, is an Illinois corporation with its principal place of business in Elgin, Illinois. *Id.* at ¶ 5. Hiwin Corporation manufactures, services, and repairs actuator systems, which are one of the main components of Global Lift's pool and spa lifts. *Id.* at ¶ 4. Defendant Hiwin Corporation is owned by Defendant Hiwin Technologies Corporation, a Taiwanese corporation with no place of business in the United States. Defendant Hiwin Technologies Corporation also owns Defendant Hiwin Mikrosystems Corporation, a Taiwanese corporation that manufactures actuator systems.

**A.**

After engaging in email negotiations, Plaintiff Global Lift prepared two purchase orders for actuator systems from Defendant Hiwin Corporation on February 20, 2012. *See* Compl. Ex. A.. The purchase orders contain material terms including quantity, pricing, delivery schedule, and a signature from Global Lift's CEO. *Id*. Pursuant to the Purchase Orders, Global Lift was to pay over $2 million to Hiwin Corporation for nearly 5,000 specially manufactured actuator systems that were allegedly designed and manufactured by the Taiwanese Defendants. *Id.* at ¶¶ 17-20. Defendant Hiwin Corporation agreed to the first two purchase orders on February 22, 2012 through Sales Order Acknowledgements. *Id.* at ¶ 17; Joe Jou Aff., ECF No. 50 Ex. A-4.

On March 16, 2012 the President of Hiwin Corporation, Joe Jou, traveled to Bad Axe, Michigan where the parties executed a confidentiality agreement. ECF No. 52. Ex. 5. Global Lift also prepared a third purchase order on that date. *See Id.* at Ex. B. Defendants contend that Hiwin Corporation eventually accepted the third purchase order by issuing a Sales Order Acknowledgment via email. *See* Joe Jou Aff. ¶ 15.

On March 26, 2012 the first units were delivered to Global Lift Corporation's location in Pigeon, Michigan. *Id.* at Ex. 6. Global Lift began incorporating the actuator systems into their swimming pool and spa lifts, which were installed across the United States. Compl. ¶ 21. By April of 2014 Global Lift discovered that the actuators had an unacceptably high failure rate. *Id.* at ¶¶ 22-23. Global Lift notified Defendants of the high failure rate, but Defendants did not address the causes of the product failure or replace the defective actuators. *Id.* at ¶ 23. Global Lift then refused to take delivery of the remaining actuator systems. Those systems remain at Defendant Hiwin's warehouse in Elgin, Illinois.

**B.**

Global Lift filed suit against the three Defendant corporations on June 4, 2014. *See* Compl., ECF No. 1. Plaintiff's original complaint alleges three claims. First, Plaintiff alleges breach of contract against all Defendants based on a failure to deliver properly manufactured and functional actuator systems and a breach of the covenant of good faith and fair dealing. *See* Compl. ¶¶ 26-32. Second, Plaintiff alleges negligent design against all Defendants. *Id.* at ¶¶ 33-35. Third and finally, Plaintiff alleges that all Defendants breached an implied warranty that the actuator systems were fit for their intended purpose. *Id.* at ¶¶ 36-38.

On July 17, 2014, the Taiwanese Defendants filed a motion to quash service of process. The motion was granted because Global Lift did not serve the Taiwanese Defendants in a

method prescribed by the Federal Rules of Civil Procedure. Global Lift was then provided multiple extensions in which to effect service and obtain proof of service. Plaintiff filed certificates of service on December 18, 2015. ECF No. 38. The certificates represent that Global Lift served Defendants on March 2, 2015, and that Defendants' answers were due on March 23, 2015. *Id*. After no answers were filed, Plaintiff moved for a default judgement against all Defendants. ECF Nos. 43, 44. The parties then stipulated to the withdrawal of Plaintiff's motion for default and for an extension for Defendants to file responsive pleadings. *See* ECF No. 49.

On April 15, 2016, the Taiwanese Defendants moved for dismissal based on a lack of personal jurisdiction, and all Defendants moved to transfer the case to the Northern District of Illinois. Both motions were denied. Defendants then moved to dismiss Count II of Plaintiff's complain under Michigan's economic loss doctrine, arguing that tort remedies are barred where the suit is between and aggrieved buyer and a non-performing seller and the only losses alleged are economic. *See* Def.s' Mot. Dismiss. In response, Plaintiff moved to amend its complaint, seeking to clarify the roles of Defendants in order to partially defeat Defendants' motion to dismiss. *See* Pl.'s Mot. Amend.

**II.**

Because an analysis of Defendants' motion to dismiss turns on whether Plaintiff is permitted to amend its complaint, Plaintiff's motion to amend must be addressed first. In its proposed amended complaint Plaintiff seeks to omit the Taiwanese Defendants from its breach of contract claim (Count I). Plaintiff's proposed amendment also omits the Taiwanese Defendants from its breach of implied warranty of fitness for a particular purpose claim, but seeks to add an additional claim of breach of implied warranty of merchantability against Defendant Hiwin Corporation (Count II). Plaintiff further seeks to add a breach of express

warranty claim against Defendant Hiwin Corporation only (Count III), and a negligent design and/or negligent manufacture claim against the Taiwanese Defendants (Count IV).

Under Federal Rule of Civil Procedure 15, a court should "freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). "[T]he thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (internal citations and quotations omitted). Factors that courts should consider when determining whether to grant leave to amend include "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment…." *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir. 1973). "Decisions as to when justice requires amendment are left to the sound discretion of the trial judge[.]" *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 591 (6th Cir. 1990).

**A.**

Defendants first argue that Plaintiff's attempt to add new breach of express and implied warranty claims against Defendant Hiwin Corp. is untimely. The Sixth Circuit has held that to deny a motion to amend as untimely, a court must also find "at least some significant showing of prejudice to the opponent." *Moore*, 790 F.2d at 562. "[D]elay alone, regardless of its length is not enough to bar [amendment] if the other party is not prejudiced." *Ziegler v. Aukerman*, 512 F.3d 777 at 786 (6th Cir. 2008) (citing *Moore*, 790 F.2d at 560, 562).

"Prejudice" in the context of Rule 15 means more than the inconvenience of having to defend against a claim. See, e.g., *Monahan v. N.Y.C. Dept. of Corr.,* 214 F.3d 275, 284 (2d Cir. 2000). It requires something more substantial. Cases have held that, in some situations, the close

of discovery is sufficient to warrant a finding of prejudice to the opponent. *See, e.g., R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 441 (6th Cir. 2005) (holding that the district court did not abuse its discretion in denying the plaintiff's motion to amend its complaint to add new parties where the case had been pending for almost two years and discovery had closed); *Duggins v. Steak 'N Shake, Inc.*195 F.3d 828, 834 (6th Cir. 1999) (affirming the district court's denial of plaintiff's motion to amend where discovery had closed, a motion for summary judgment had been filed, and the plaintiff had been aware of the basis for the new claim since filing the complaint).

While Defendants argue that Plaintiff's proposed amendments are untimely, Defendants have not made any showing of prejudice. While it is true that the present case was filed over two years ago, under the current scheduling order discovery is not scheduled to close until January 30, 2017, and thus will not require any extension to the scheduling order. *See* ECF No. 67. For these reasons, Defendants' untimeliness argument is without merit.

**B.**

Defendants also argue that Plaintiff's proposed negligent design claim against the Taiwanese Defendants is futile due to Michigan's economic loss doctrine. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010) (internal citation and quotation marks omitted). A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert*, 517 F.3d at 439. The pleader need not have provided "detailed factual allegations" to

survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570).

Pursuant to the Michigan's economic loss doctrine, a plaintiff may not recover under a tort theory for a claim that sounds in contract.[1] *See Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612 (Mich. 1992). If a purchaser suffers only economic losses at the hands of a seller, then the purchaser's only available remedy is in contract. *Id*. at 615. Economic losses are defined by statute as "objectively verifiable pecuniary damages arising from … loss of use of property, costs of repair or replacement of property, costs of obtaining substitute domestic services, loss of employment, or other objectively verifiable monetary losses." Mich. Comp. Laws Ann. § 600.2945(c).

"The doctrine is premised on the idea that barring tort claims arising from a commercial transaction is appropriate where the risks giving rise to those claims were anticipatable and subject to the contractual bargaining process." *Tyson v. Sterling Rental, Inc*., --- F.3d ---, 2016 WL 4578642 *8 (6th Cir. Sept. 2, 2016). For this reason, the doctrine may apply even where there is no privity of contract between the plaintiff and defendant if there is a contract or commercial transaction governing the plaintiff's economic expectations. *See Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 656 N.W.2d 858, 865-866, 894 (Mich. App. 2002) ("[i]n order for

---

[1] In its previous order denying Defendants' motion to dismiss for lack of personal jurisdiction and motion to transfer, this Court determined that, based on the current evidence, Illinois law would likely supply the rule of decision for any conflict of law. *See* Op. & Order 5-7, ECF No. 57. Nevertheless, the parties have briefed the economic loss doctrine issue under Michigan law. As pointed out by Defendants, the result would be the same under Illinois law under the Moorman Doctrine, as articulated in *Moorman Manufacturing Company v. National Tank Company,* 91 Ill. 2d 69 (1982) (holding that a contracting buyer could not recover purely economic losses under a tort theory of negligence); *see also Hecktman v. Pac. Indem. Co.*, --- N.E. 3d --- (Ill. App. Ct. 2016) (collecting cases).

the economic loss doctrine to bar recovery in tort, there must be a transaction that provides an avenue by which the parties are afforded the opportunity to negotiate to protect their respective interests."); *Neibarger*, 486 N.W.2d at 616 ("the individual consumer's tort remedy for products liability is not premised upon an agreement between the parties, but derives either from a duty imposed by law or from policy considerations which allocate the risk of dangerous and unsafe products to the manufacturer and seller rather than the consumer.")  In its classic application, "the doctrine is used to bar recovery for product liability claims arising from a purchased good's failure to live up to the buyer's expectations[.]" *Tyson,* 2016 WL 4578642 *8.

Plaintiff argues that Michigan's economic loss doctrine only applies to claims against manufacturers, and does not apply to its claims against non-manufacturer defendants.  Plaintiff has cited no law in support of this argument.  In fact, Michigan law expressly limits a plaintiff's ability to bring actions against non-manufacturing sellers independent of the limitation of remedies governed by the economic loss doctrine.  The statute provides:

> In a product liability action, a seller other than a manufacturer is not liable for harm allegedly caused by the product unless either of the following is true:
>
> > (a) The seller failed to exercise reasonable care, including breach of any implied warranty, with respect to the product and that failure was a proximate cause of the person's injuries.
> >
> > (b) The seller made an express warranty as to the product, the product failed to conform to the warranty, and the failure to conform to the warranty was a proximate cause of the person's harm.

*See* Mich. Comp. Law § 600.2947(6). Moreover, it is unclear how Plaintiff's negligence claim – pled as a claim of negligent manufacturing or design – could properly be stated against a party that was not involved in the manufacturing or design of a product.  Indeed, in its proposed amendment Plaintiff seeks to assert its negligence claim against Defendants Hiwin Technologies and Hiwin Mikrosystems.  It is undisputed that Defendant Mikrosystems was the manufacturer

of actuator systems at issue, and Plaintiff claims in its amended complaint that Defendant Hiwin Technologies was also involved in the design and manufacturer of the systems. *See* Proposed Am. Compl. ¶ 6, ECF No. 78 Ex. A. Plaintiff's argument is therefore at odds with its own proposed amendment.

Because the purchase orders between Plaintiff and Defendant Hiwin Corporation governed Plaintiff's expectations regarding the actuators, and because Plaintiff has only alleged economic losses, the economic loss doctrine bars Plaintiff from recovering against Defendants in tort. The fact that Plaintiff was not in privity of contract with the Taiwanese Defendants is immaterial. *See Neibarger*, 486 N.W.2d at 616. Plaintiff's proposed amended Count IV is futile, and its motion to amend will be denied in part.

## C.

In summary, Plaintiff's motion to amend will be granted to the extent it seeks to assert claims of breach of contract, breach of the implied warranties of fitness for a particular purpose and merchantability, and breach of express warranty against Defendant Hiwin Corporation. Plaintiff's motion will be denied to the extent it seeks to add a negligent manufacturing and design claim against Defendants Hiwin Technologies and Hiwin Mikrosystems.

## III.

In its motion to dismiss Defendants argue that the negligent design claim set forth in Plaintiff's original complaint should be dismissed under the economic loss doctrine. *See* Def.s' Mot. Dismiss. Because this motion is resolved by Plaintiff's motion to amend and the above analysis, it will be denied as moot.

## IV.

Accordingly, it is **ORDERED** that Plaintiff's motion to amend, ECF No. 78, is **GRANTED IN PART AND DENIED IN PART.** The motion is **GRANTED** to the extent it seeks to assert claims of breach of contract, breach of the implied warranties of fitness for a particular purpose and merchantability, and breach of express warranty against Defendant Hiwin Corporation. It is **DENIED** to the extent it seeks to add a negligent manufacturing and design claim against Defendants Hiwin Technologies and Hiwin Mikrosystems.

It is further **ORDERED** that Plaintiff is **DIRECTED** to file its amended complaint on or before **October 10, 2016.**

It is further **ORDERED** that Defendant's motion to dismiss, ECF No. 62, is **DENIED as moot.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 29, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 29, 2016.

s/Kelly Winslow for
MICHAEL A. SIAN, Case Manager